# Richmond.

## E. W. FEUCHTENBERGER v. WILLIAMSON, CARROLL & SAUNDERS.

### November 15, 1923.

1. MECHANICS' LIENS—*Subjects of Mechanics' Liens—Equitable Interest in Land.*—An equitable interest or estate in land is subject to a mechanics' lien, unless the statute expressly excludes such a construction.

2. VENDOR AND PURCHASER—*Installment Contract—Failure of Purchaser to Pay More than Part of First Installment—Equitable Interest of Purchaser—Case at Bar.*—A vendor agreed to sell seven lots. The purchaser agreed to pay ten monthly installments of $75.00 each. The contract provided that possession was to be delivered to the purchaser, but it was agreed that if the purchaser should fail to keep up the monthly payments the contract should be considered null and void and that the vendor should have the right to re-entry. The purchaser never paid more than $25.00 of the initial installment.

   *Held:* That the purchaser had no right, title or interest, legal or equitable in the property.

3. VENDOR AND PURCHASER—*Installment Contract—Failure of Purchaser to Pay More than Part of First Installment—Equitable Interest of Purchaser—Interest in the Entire Land or Part Thereof—Case at Bar.*—Under a contract for the sale of seven lots, the purchase money was to be paid in installments, the purchaser only paid a small part of the first installment. The contract provided that only upon the completion of the installment payments was the vendor obliged to give a deed for all the lots.

   *Held:* That even if the purchaser had an equitable interest in the entire seven lots, she did not have a severable interest in two of the lots, so that a purchaser of these lots could, by paying the estimated value thereof, discharge them from the legal owner's claim for the purchase money. If the original contract of sale had not been abandoned by the parties, there would be no right of the vendee to discharge two of these lots from the vendor's claim, because the vendor would be under no obligation to convey any of them until the entire purchase money for all of them had been fully paid.

4. VENDOR AND PURCHASER—*Sale of Several Lots—Installment Payments—Partial Payment by Purchaser—Lien on all the Lots.*—Under a contract

for the sale of several lots on installment payments where the purchaser fails to pay all the installments, if the vendor's claim is likened to the lien of a mortgage, the lien covers each and every one of the lots, and none of them can be discharged from it, except with the consent of the grantor.

5. MECHANICS' LIENS—*Equitable Estate—Lien Perishes with the Estate.*—When mechanics' liens are entered against an equitable estate, their value depends upon that particular estate, and they survive or perish with it.

6. MECHANICS' LIENS—*Ownership of the Property—Section 6436 of the Code of 1919 and Section 6426 of the Code of 1919 Construed Together—Person Ordering Improvemen'.*—Section 6426 of the Code of 1919, which provides in general terms that all persons performing labor or furnishing material for the construction of buildings shall have a mechanics' lien upon the structure and the land necessary for its use, must be construed in connection with section 6436 of the Code of 1919, which in terms provides that where one owns less than a fee simple estate in the land then only his interest therein shall be subjected to the lien. It is clear that the General Assembly only intended to authorize mechanics' liens upon the interest or estate in the land of the person requiring or authorizing the work to be done.

7. MECHANICS' LIENS—*Statutory Remedy—Lien and Jurisdiction Dependent on Statute.*—The very existence of a mechanics' lien on land as well as the jurisdiction of the court to enforce it depends upon statute and not upon equitable or ethical rules, so that neither the conscience of the chancellor nor the length of his foot can supplement the statute, and vest the court with any jurisdiction except that which is based upon the statute fairly construed.

8. MECHANICS' LIENS—*Improvements not Ordered by Owner of Property—Constitutionality of act Giving Lien.*—If section 6426 of the Code of 1919, providing generally that persons performing labor or furnishing material for the construction of buildings shall have a lien on the structures and so much of the land as is necessary, could be construed as authorizing a lien on the interest of a person not ordering the work to be done, it would seem that the provision would be unconstitutional as taking private property without the owner's consent.

9. MECHANICS' LIENS—*Estoppel of Owner to Deny Lien—Owner's Knowledge that Building was Being Erected.*—While the owner of land may by his conduct estop himself from denying that a building contractor who has erected a structure on the land has a lien thereon, yet the owner's mere knowledge that the contractor was building on the land by direction of the owner's vendee, under a contract to convey, is not alone sufficient to establish such an estoppel.

10. MECHANICS' LIENS—*Vendor and Purchaser—Subjecting Interest of Vendor—Case at Bar.*—In the instant case the vendor had contracted to

sell seven lots. The purchaser agreed to pay ten monthly payments of $75.00 each. The contract provided that possession was to be delivered to the purchaser, but no deed was to be made until all the installments were paid, and should the purchaser fail to pay the installments the contract was to be considered null and void and the vendor should retain the payments made as liquidated damages. The purchaser only paid $25.00 of the first installment. The purchaser caused a barn to be erected on two of the lots and the contractors filed a mechanics' lien. The vendor had knowledge of the erection of the barn. The lower court decreed that the two lots and barn should be sold for the satisfaction of the lien.

*Held:* That the decree of the lower court should be reversed, as to affirm the decree would be to take the vendor's property when he was without fault, because of the default of the purchaser.

Appeal from a decree of the Circuit Court of Albemarle county. Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*E. V. Walker* and *L. F. Smith,* for the appellees.

*Perkins, Walker & Battle,* for the appellant.

Prentis, J., delivered the opinion of the court.

These are the circumstances which give rise to this litigation: The appellant being the owner of certain lots, on March 23, 1922, entered into an agreement under seal to sell seven of them to Ada M. Wood. The purchaser agreed to pay $2,000.00 therefor, in ten monthly payments of $75.00 each, on the last day of each month ($750.00), and that after such ten monthly payments had been made the lots were to be conveyed in fee simple and the balance of the purchase money, $1,250.00, was to be secured by deed of trust, and all of such deferred payments were to bear six per cent.

interest. The contract also provided that possession was to be delivered to the vendee, but it was furthermore "distinctly understood and agreed that should the purchaser fail to keep up the monthly payments when the same shall respectively fall due, then this contract shall be considered null and void, and the vendor is to retain the payments made hereunder as liquidated damages, and shall have the right to re-enter and take possession himself of the lots hereby conveyed, without notice to the purchaser, and without legal action of any kind or description. The vendee, Wood, never paid the initial installment of $75.00, but paid $25.00 thereof.

The appellees, who were general contractors, agreed to build a dairy barn on two of these lots, referred to as 41 and 42. The building was promptly completed within about two weeks, but never paid for. Then the contractors filed a mechanics' lien, claiming $632.00, with interest, from April 6, 1922. The bill alleges that the barn was completed April 6, 1922, and the lien is asserted against the building "and so much of the equitable interest (in these two lots) as the said Ada M. Wood is entitled to under the said contract."

The appellant answered the bill, admitting the contract of March 23, 1922, for the sale of the seven lots, the payment of $25.00, but alleged that as Wood failed entirely to carry out the terms of her written contract, it was treated as abrogated, null and void, and that both the legal and equitable title had reverted to him; that the building had been erected without his knowledge or consent, and that the contractors had full knowledge that Wood had no title or interest in the land.

There was a decree referring the cause to a commissioner for a report as to the interests of the parties and

their consequential rights. The commissioner reported that Wood had abandoned her contract; that the $25.00 paid by her under the contract had been forfeited, and that at the time of his report she had no right, or title, to the property, but that he is of opinion that Feuchtenberger is estopped, so far as the validity of the mechanics' lien is concerned, from denying that Mrs. Wood owned the lots on which the barn was built. He further reported in favor of the lien of the contractors, and that to enforce it the two lots upon which the barn is located should be sold, but that in the distribution of the proceeds of the sale Feuchtenberger is to be preferred to the extent of $200.00, the estimated value of these two lots.

The court, over the exception of the appellant, confirmed the report and directed the sale of the lots for the satisfaction of the claim, and decreed that the appellant should be preferred in the distribution of the proceeds as suggested by the commissioner, thus treating the appellant as if he held a lien on the lots for $200.00. (*Fidelity Loan, etc., Co.* v. *Dennis*, 93 Va. 504, 25 S. E. 546.)

The question presented, then, is whether under the circumstances shown the contractors are entitled to have the two lots, with the building thereon, sold for the satisfaction of the lien claimed.

There are many cases involving such liens, and while the statutes are of the same general type, still as there are many minor differences which have led to different conclusions, the cases from other jurisdictions do not always aid us in construing the Virginia statute.

The rights of the parties must be determined by a fair construction of the Virginia statute, Code, sections 6426 to 6437, inclusive.

For the appellant, it is urged, among other things,

that inasmuch as Mrs. Wood has no interest whatever in the real estate, the court is without power to sell it, because section 6436 expressly provides that "if the person who shall cause such building or structure to be erected or repaired owns less than a fee simple estate in such land, then only his interest therein shall be subjected to said lien." Whereas the appellees undertake to support the decree by section 6426, which contains no such limitation, but provides in general terms that all persons performing any labor or furnishing materials for the construction of buildings, shall have a lien upon such structures and so much of the land therewith as shall be necessary for the convenient use and enjoyment thereof, if perfected as required by statute; so that the issue to be determined is clear.

[1] We find that it appears to be perfectly well settled that an equitable interest or estate in land is subject to a mechanics' lien, and this so far as we know is universally held, unless the statute expressly excludes such a construction. *Lyon* v. *McGuffey*, 4 Pa. St. 126, 45 Am. Dec., note, 678; *Wilson* v. *Lubke*, 176 Mo. 210, 75 S. W. 602, 98 Am. St. Rep., note, 508; *Belnap* v. *Condon*, 34 Utah 213, 97 Pac. 111, 23 L. R. A. (N. S.), note, 612; 18 R. C. L. 884-885.

[2, 3] So that if it can be held that Wood has any equitable right, title or interest in these two lots, there is jurisdiction to sell that interest. It is clear, however, that she has no right, title or interest, legal or equitable, in the property, or any of it. Even if it appeared that she has an equitable interest in the entire seven lots covered by the contract, we know of no principle under which it could be held that she has such a severable interest in two of the lots so that a purchaser of these lots could, by paying the estimated value thereof, discharge them from the legal owner's

claim for purchase money. Expressed differently, if the original contract of sale had not been abandoned by the parties, there would be no right of the vendee to discharge two of these lots from the vendor's claim, because he would be under no obligation to convey any of them until the entire purchase money for all of them had been fully paid.

[4] If the vendor's claim is likened to the lien of a mortgage, the lien covers each and every one of the lots and none of them can be discharged from it, except with the consent of the grantor.

[5] In *Campbell and Pharo's Appeal*, 36 Pa. St. 247, 78 Am. Dec. 375, it is expressly held that when mechanics' liens are entered against an equitable estate, their value depends upon that particular estate, and they survive or perish with it; and we know of no rule to the contrary.

[6-8] As we understand the claim urged by the contractors, stated most favorably, it is argued that as the building was constructed by Mrs. Wood, who was lawfully in possession (not as a lessee), that therefore section 6426 expressly creates an unqualified lien on the land, without reference to her interest therein, and that therefore this lien may be enforced under general equitable doctrines. This construction of that section ignores 6436, which in terms provides that only the interest of one who owns less than a fee simple can be subjected. Manifestly, however, the sections must be construed together, and the lienor has no remedy except that prescribed by the statute. The interest referred to in section 6436 is in that section contrasted with an estate in fee simple, so that by certain intendment, it can only refer to an estate, legal or equitable, which is less than a fee. The very existence of the lien on the land as well as the jurisdiction of the court to enforce it is

here involved. Both the lien and the jurisdiction of the court depend upon the statute, and not upon equitable or ethical rules. So that neither the conscience of the chancellor nor the length of his foot can supplement the statute, and vest the court with any jurisdiction except that which is based upon the statute fairly construed.

Even if we could support the proposition that the language of section 6426 was intended to create an unqualified lien without reference to the ownership of the property, we would encounter another difficulty which was presented in the case of *Santa Cruz Rock Pavement Co.* v. *Lyons,* 117 Cal. 212, 48 Pac. 1097, 59 Am. St. Rep. 174. There was a statute which provided that "any person who at the request of the reputed owner of any lot in any incorporated city or town, grades, fills in, or otherwise improves the same, or the street or sidewalk in front of or adjoining the same, or constructs any areas or vaults or cellars or rooms under said sidewalk, or makes any improvements in connection therewith, has a lien upon such lot for his work done and materials furnished." The court said this: "The owner of real property may, by his acts or conduct, be estopped from questioning the acts of a reputed owner of such property, and may thereby be bound by the acts of such reputed owner; but, in the absence of the elements of an estoppel, he will not be bound by the unauthorized acts of one who is merely reputed to be the owner of the land. He cannot be deprived of his title to the land, nor can a lien be imposed thereon, against his will, by virtue of any agreement or contract on the part of one who is merely reputed to be the owner of such land, unless he has in some way held such person out as the reputed owner, with authority to do the act, or make the agreement

by which it is sought to create the lien. It is no more within the constitutional power of the legislature to authorize a reputed owner of a lot or parcel of land to create a lien thereon, against the will of the real owner, than it would be to authorize such reputed owner to transfer the title to said land; and we hold, therefore, that so far as the foregoing section of the Code purports to authorize the creation of a lien upon land, by virtue of a contract for the improvement of the street adjacent thereto, entered into with one who is only the reputed owner of the land, or to affect the interest of the real owner therein, it is unconstitutional."

In *John Spry Lumber Co.* v. *Sault Savings Bank Loan & Trust Co.*, 77 Mich. 199, 43 N. W. 778, 18 Am. St. Rep. 396, 6 L. R. A. 204, a statute which undertook to create an unqualified mechanics' lien, although the owner had fully paid the contractor for the building, without notice of the claim, was held unconstitutional as striking at the foundation of all property in land, because there is no constitutional way for divesting one's title to land except by his own act or default.

In *Meyer* v. *Berlandi*, 39 Minn. 438, 40 N. W. 513, 1 L. R. A. 777, 12 Am. St. Rep. 663, a mechanics' lien statute was held unconstitutional for similar reasons.

We think it clear that the General Assembly here only intended to authorize mechanics' liens upon the interest or estate in the land of the person requiring or authorizing the work to be done. If it could be otherwise construed, it would, we assume, receive the same condemnation which the California, Michigan and Minnesota courts have expressed—that is, it would be held to be an attempt to take private property for private purposes without the owner's consent and without due process of law.

It is necessary to refer to the position which appears

to be also confidently relied on for the appellee, and that is that the owner here expressly or impliedly authorized the construction of this building, and is therefore estopped to deny his vendee's title.

[9] We do not question the soundness of the legal proposition for undoubtedly the owner of land may by his conduct estop himself from denying that a building contractor has such a lien thereon. For the determination of this question it is necessary to refer to the evidence. When we do this we find nothing which justifies the conclusion that the contractors could possibly have been induced to do their work upon the faith of any word or action of the appellee. All that is shown is that after the barn had been commenced, he observed from a distance when driving in that vicinity that a barn was being built, but that he did not know whether it was on any of the lots sold to Mrs. Wood or upon some other lot; that afterwards, when Mrs. Wood came to his store, she said it was being built on her lot. But how could this have deceived the contractors, and how can this be held to create an estoppel for the prevention of a fraud upon them? At that time the appellee had no right to assume that Mrs. Wood would not pay for the lots. If she had paid for them, then under perfectly well settled precedents the contractors' lien would have attached to the fee. There may be circumstances under which the knowledge of the owner and his conduct indicating a fraudulent purpose to induce the contractor to proceed with his work which will estop him from contesting the contractors' lien, but no such circumstances appear in this record and there is nothing to indicate that the contractors ever had any interview or communication with the appellant, and consequently they cannot rely upon this suggestion. Feuchtenberger's mere knowledge that

Mrs. Wood was building, or had built, upon the property is not alone sufficient to establish an estoppel, and that is all that appears here. *Hiden* v. *Mahanes*, 119 Va. 119, 89 S. E. 121.

The evidence is in conflict as to whether the improvements increase or diminish the value of the two lots. That depends upon what use the owner might desire to make of the building. It was built by Mrs. Wood as a dairy barn for use in connection with other property fronting on a different street, which was then owned by her. The building thereon which was then occupied by her was burned before the barn was completed. It is clearly indicated that this barn could only be well utilized by one wishing to conduct a dairy.

[10] To affirm this decree would be, by authority of the mechanics' lien statute, to take Feuchtenberger's property when he is without fault, because of the default of Wood, and thus for the benefit of the contractors to improve the owner out of his own lots, and this we believe is everywhere denied.

The decree will, therefore, be reversed, and a decree entered here dismissing the bill as to appellee, Feuchtenberger.

*Reversed.*